UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| TERESA WATSON, | ) | No. ED CV 09-1447-PLA |
| Plaintiff, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 31, 2009, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on August 31, 2009. The parties filed a Joint Stipulation on May 19, 2010, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## **BACKGROUND**

Plaintiff was born on January 25, 1955. [Administrative Record ("AR") at 41, 792.] She has an eleventh grade education [AR at 793], and has past relevant work experience as a quality control manager and quality systems technician. [AR at 794-95, 810.]

Plaintiff protectively filed her application for Disability Insurance Benefits on March 12, 2004, alleging that she has been unable to work since April 24, 2002, due to, among other things, back and knee problems and organic mental disorders. [See AR at 14, 41, 71-73, 81-87.] After plaintiff's application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 44-60, 63-68.] A hearing was held on January 9, 2007, at which plaintiff appeared without counsel and testified on her own behalf. A vocational expert ("VE") also testified. [See AR at 787-813.] On March 29, 2007, the ALJ found plaintiff not disabled. [See AR at 11-24.] When the Appeals Council denied plaintiff's request for review of the hearing decision on June 3, 2009, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to

perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since April 24, 2002, the alleged onset date of disability.[1] [AR at 16.] At step two, the ALJ concluded that plaintiff has "severe" impairments of her musculoskeletal system and "severe" cognitive and affective disorders. [Id.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity[2] "to lift and carry 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand/walk for six hours out of an eight hour day and occasionally climb, balance, stoop, kneel, crouch or crawl[, and that] [s]he is limited to simple repetitive tasks with minimal job changes." [AR at 17.] At step four, the ALJ concluded that plaintiff is unable to perform her past relevant work. [AR at 22.] At step five, relying on the Medical-Vocational Rules as a framework and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 22-23.] Accordingly, the ALJ found plaintiff not disabled. [AR at 23-24.]

/

---

[1] The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 31, 2006. [AR at 16.]

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

# V.

# **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) assess her RFC; (2) consider the treating physician's opinion; (3) solicit testimony from the VE; (4) evaluate whether she was able to perform other work; and (5) assess her credibility. [Joint Stipulation ("JS") at 2-3.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.   THE ALJ'S RFC DETERMINATION AND THE VE'S TESTIMONY**

Plaintiff contends that the ALJ erred in determining her RFC and in soliciting testimony from the VE. [JS at 3-4, 12-14.] Specifically, plaintiff asserts that the ALJ erred in excluding from his RFC determination and his hypothetical questions to the VE the opinion of consultative examining psychologist Dr. Mark D. Pierce that plaintiff is limited to work involving simple one- and two-step instructions, and that the ALJ did not properly reject Dr. Pierce's opinion in this regard. [Id.] Plaintiff also argues that the ALJ erred in ignoring without explanation the opinion of plaintiff's treating physician, Dr. Duncan McBride, concerning plaintiff's physical limitations. [JS at 9-11.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); see Social Security Ruling[3] 96-8p, 1996 WL 374184, at *5, *7. Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)).

---

[3]  Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527 (as amended by 75 FR 62676-01 (Oct. 13, 2010)), 416.902, 416.927 (as amended by 75 FR 62676-01); see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Similarly, "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician." Lester, 81 F.3d at 830 (quoting Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even where an examining physician's opinion is contradicted by another doctor, the ALJ must still provide specific and legitimate reasons supported by substantial evidence to properly reject it. Id. at 830-31 (citing Andrews 53 F.3d at 1043).

Plaintiff's treating records reflect that she was treated by Dr. McBride from September 2002 to at least May 2006. [See AR at 435, 446-51, 456-60, 464-68, 501-49, 782-86.] On August 23, 2004, Dr. McBride conducted a physical examination of plaintiff and assessed her physical limitations. [AR at 511-13.] Specifically, Dr. McBride opined that plaintiff was unable to lift more

than 10 pounds or stand more than 15 minutes, could only sit 20 to 30 minutes at a time, and could drive no more than 30 minutes at a time. [AR at 511.]

On December 20, 2004, Dr. Pierce completed a Psychological Evaluation of plaintiff [AR at 615-19], in which he stated that plaintiff was alert, responsive, and cooperative, and that she put forth an "adequate effort, interest, and compliance." [AR at 617.] He opined that plaintiff exhibited, among other things, "under-modulated" mood and affect "consistent with her subjective complaint of anxious and depressive adjustment;" longer-term memory that is "fair-to-mildly limited for factual information;" concentration and attention span "showing mild challenge with attentionally-mediated testing" and "significantly limited" "Arithmetic and Working Memory efforts;" and intellectual functioning "within the borderline and low average range for verbal, performance and full scale" I.Q. scores. [AR at 617-18.] Dr. Pierce diagnosed plaintiff with cognitive disorder, not otherwise specified, and affective disorder, not otherwise specified, and opined that plaintiff has "attention deficits and mild reduction in intellectual performance, with related affective disturbance, regarding the current capacity for work." [AR at 619.] Specifically, Dr. Pierce assessed plaintiff's functional limitations as including: a "capacity to complete simple and repetitive-to-medium-demand vocational skills and to adapt to minimal changes in a work environment;" a mild difficulty "working effectively with others due to her depressive adjustment;" an ability to remember and comply with simple one- and two-part instructions; and an ability to "concentrate adequately for a lower-demand regular work schedule for a full workweek." [Id.]

The Court concludes that the ALJ in his decision did not adequately address or reject Dr. McBride's or Dr. Pierce's findings. First, even though Dr. McBride's opinion that plaintiff cannot stand for more than 15 minutes or sit for more than 30 minutes directly conflicts with the ALJ's RFC determination that plaintiff can sit for six hours and stand/walk for six hours out of an eight-hour day, the ALJ did not explain the weight he afforded to or provide specific and legitimate reasons for rejecting Dr. McBride's August 2004 assessment of plaintiff's physical limitations. Second, although the ALJ in the decision discussed Dr. Pierce's December 2004 Evaluation, and asserted that he assigned "greater weight" to his opinion than the treating physicians' opinions that the ALJ expressly rejected in the decision (which did not include Dr. McBride's opinion), the ALJ

1 did not include in the RFC determination Dr. Pierce's opinion that plaintiff is limited to work
2 requiring only simple one- and two-step instructions. [See AR at 20-22.] Because the ALJ did not
3 include in the RFC determination these portions of Dr. McBride's and Dr. Pierce's opinions, it
4 appears that the ALJ implicitly rejected these findings without providing any reason for doing so.[4]
5 This constitutes error because the ALJ did not provide specific and legitimate reasons based on
6 substantial evidence in the record, as is required for rejecting the findings of a treating or
7 examining physician.[5] Lester, 81 F.3d at 830; see Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th

---

[4] Defendant asserts that the ALJ's RFC determination that plaintiff is able to complete simple repetitive tasks sufficiently encompassed Dr. Pierce's opinion that plaintiff can only remember and comply with simple one- and two-step instructions. [JS at 5-6, 14.] The Court disagrees. All jobs listed in the Dictionary of Occupational Titles ("DOT") have general education development ("GED") levels -- defined as "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991). A job's GED level pertains to, among other things, the reasoning development level necessary to perform a job, ranging from 1 (the lowest level) to 6 (the highest level). Id. As defendant correctly notes [see JS at 5-6], courts have concluded that a person capable of performing simple repetitive tasks can perform jobs with a GED reasoning level of one (defined in the DOT as requiring an employee to apply "commonsense understanding to carry out simple one- and two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job") **and** jobs with a GED reasoning level of two (defined in the DOT as requiring an employee to apply "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations"). See, e.g., Meissl v. Barnhart, 403 F.Supp.2d 981, 983-84 (C.D. Cal. 2005) (citing Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); Money v. Barnhart, 91 Fed.Appx. 210, 214 (3rd Cir. 2004)); DOT, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (1991).
  Here, in opining that plaintiff is only able to perform simple one- and two-step instructions, Dr. Pierce in effect opined that plaintiff can **only** perform jobs with a GED reasoning level of **one**. Accordingly, the ALJ's determination that plaintiff can do simple repetitive tasks (i.e., jobs with GED reason levels of **up to two**) did not adequately encompass Dr. Pierce's opinion, as jobs with a GED reasoning level of two would be too challenging for plaintiff according to Dr. Pierce's opinion. See Meissl, 403 F.Supp.2d at 983 (noting that a job with a GED reasoning level of two "would involve more detail, as well as a few more variables, than that with a reasoning level of one"); Grisby v. Astrue, 2010 WL 309013, at * 2 (C.D. Cal. Jan. 22, 2010) ("Level 2 reasoning jobs may be simple, but they are not limited to *one- or two-step instructions.* The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning.") (emphasis in original).

[5] Defendant's assertion that the ALJ properly disregarded Dr. McBride's opinion because it was based on plaintiff's subjective complaints and was contradicted by the medical evidence is
(continued...)

Cir. 1993). Moreover, "[j]udicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983) (finding that an ALJ's failure to explain why he disregarded medical evidence prevented "meaningful judicial review"). The ALJ's failure to expressly explain why he apparently rejected and did not include in the RFC determination Dr. McBride's and Dr. Pierce's findings as discussed above prevents meaningful judicial review. "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that ... [the] [C]ourt can determine whether the reasons for rejection were improper." Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) (internal citation omitted). Remand is warranted so that the ALJ can properly consider Dr. McBride's and Dr. Pierce's findings.

Since the ALJ did not properly consider or reject the portions of Dr. McBride's and Dr. Pierce's findings discussed above, the ALJ's RFC determination was also defective. See Valentine, 574 F.3d at 690; SSR 96-8p, at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Remand is warranted for the ALJ to reconsider plaintiff's RFC once the medical evidence has been fully evaluated as set forth herein. Similarly, since the ALJ based his hypothetical question to the VE on an RFC determination that excluded the portions of Dr. McBride's and Dr. Pierce's findings described above, new VE testimony may be necessary on remand if, after reconsidering the medical evidence discussed above, the ALJ credits any portion(s) of Dr. McBride's and Dr. Pierce's findings previously excluded from the RFC determination. See Osenbrock v. Apfel, 240 F.3d

---

⁵(...continued)
unavailing. [See JS at 9-11.] "A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency." Ceguerra v. Sec'y of Health & Human Services, 933 F.2d 735, 738 (9th Cir. 1991); see also Barbato v. Comm'r of Soc. Sec. Admin., 923 F.Supp. 1273, 1276 n.2 (C.D. Cal. 1996) ("the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision" and "[i]f the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for remand") (citation omitted). Here, the ALJ provided no reasons for rejecting Dr. McBride's opinion.

1157, 1163 (9th Cir. 2001) ("An ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."). Moreover, as new VE testimony may be warranted, the Court exercises its discretion not to resolve plaintiff's contention that the ALJ improperly concluded -- based in part on the VE's testimony -- that plaintiff can perform other work. [See JS at 18-19.]

**B. THE ALJ'S CREDIBILITY DETERMINATION**

Plaintiff contends that the ALJ improperly considered her testimony and erred in finding her incredible. [JS at 20-23.] As the ALJ's credibility determination was based, in part, on his analysis of the medical evidence, which the Court finds was improper for the reasons discussed above, the ALJ is instructed to reassess plaintiff's credibility after he has reconsidered the medical evidence.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to reconsider the medical findings of Dr. McBride and Dr. Pierce, the RFC determination, and plaintiff's ability to perform other work

/
/
/
/
/
/
/
/
/

at step five.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: October 22, 2010

                                           PAUL L. ABRAMS
                            UNITED STATES MAGISTRATE JUDGE